UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lynk Media LLC,

Plaintiff,

v.

The First Digital, Inc.,

Defendant.

Case No:

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Lynk Media LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant The First Digital, Inc. ("*Defendant*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Oliya Fedun ("*Fedun*") is a professional videographer and independent journalist who works under the name "Oliya Scootercaster" and owns and operates FreedomNews.TV, an independent news outlet that records and livestreams breaking news, protests, public demonstrations, and other events of public concern.

3. For many years, Fedun has devoted her career to documenting public-interest events, breaking news incidents, public demonstrations, public figures, and other matters of public concern. Her visual works have appeared in newspapers, magazines, websites, media outlets, and other publications throughout the United States and internationally.

4. Fedun's video works are routinely licensed for authorized editorial, commercial, promotional, documentary, and digital-media uses. Through substantial investment of time, skill, creativity, training, equipment, travel, and expense, Fedun has developed a valuable portfolio of original audiovisual works.

5. Plaintiff derives income from the licensing and authorized use of copyrighted



SLG SANDERS · LAW GROUP ·

audiovisual works and relies upon licensing revenue as an important component of its business operations.

6. Fedun created a video entitled "8.27.2023 Burning Man Protest" (the "Video") in which Plaintiff, as Fedun's assignee, owns the copyright and which Plaintiff licenses for various uses, including online and print publications.

7. Defendant owns and operates the website located at www.thefirsttv.com (the "*Website*").

8. Upon information and belief, Defendant uses the Website to publish and distribute news articles, commentary, editorial content, photographs, videos, advertising materials, sponsored content, and other media-related content.

9. Upon information and belief, Defendant derives commercial benefit from the operation of the Website through advertising revenue, audience engagement, customer traffic, brand promotion, and related revenue-generating activities.

10. Defendant, without permission or authorization from Plaintiff, publicly displayed and exploited the Video on the Website and engaged in this misconduct knowingly and in violation of the United States copyright laws.

**PARTIES**

11. Plaintiff is a New York limited liability company and maintains its principal place of business in Queens County, New York.

12. Defendant is a Delaware corporation with a principal place of business at 129 W 29th St 600N, New York in New York County, New York.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

14. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

15. Venue is proper under 28 U.S.C. §1400(a) because Defendant resides and may be



SLG SANDERS · LAW GROUP ·

found in this Judicial District, and under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

16. Fedun is a professional videographer and independent journalist. Working under the name "Oliya Scootercaster," she owns and operates FreedomNews.TV, through which she has for many years recorded and livestreamed breaking news, protests, public demonstrations, and other events of public concern, often from the front lines of fast-moving events where professional news crews are not present.

17. Fedun's footage is regularly licensed by national and international news organizations. The Video itself has been licensed for use by, among others, Fox News, the New York Post, the Daily Mail, NewsNation, The Sun, and KTVN.

18. Plaintiff has devoted substantial time, skill, effort, and expense to developing a portfolio of original audiovisual works created by Fedun.

19. Plaintiff's video works are valuable intellectual-property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use.

20. Unauthorized use of Plaintiff's copyrighted works deprives Plaintiff of licensing income, diminishes the value of those works, and interferes with the market for authorized licenses.

21. On August 27, 2023, Fedun first published the Video. A screengrab of the Video is attached hereto as Exhibit 1.

22. In creating the Video, Fedun personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the Video recording and made each and every artistic determination necessary for the creation of the work.

23. On September 18, 2023, the Video was registered by the USCO under Registration No. PA 2-436-843.

24. The registration identifies Fedun as the author of the entire motion picture,

SLG SANDERS LAW GROUP

identifies Plaintiff as the copyright claimant, and states that Plaintiff obtained ownership of the copyright by written agreement.

25. Fedun created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution.

26. By written assignment, Fedun assigned to Plaintiff all right, title, and interest in and to the Video, including the copyright therein and all accrued causes of action for its infringement.

**B. <u>Defendant's Infringing Activity</u>**

27. Defendant is the registered owner of the Website and is responsible for its content. Defendant is the operator of the Website and is responsible for its content.

28. The Website is a key component of Defendant's popular and lucrative commercial enterprise.

29. The Website is monetized in that it contains paid advertisements and, on information and belief, Defendant profits from these activities.

30. Defendant operates The First, a conservative news and opinion network that, since its launch in October 2019, has produced dozens of hours of original programming each week, including Bill O'Reilly's "No Spin News," and distributes that programming through the Website and through free, advertising-supported streaming and television platforms, including Pluto TV and DirecTV.

31. Defendant's business depends on attracting viewers and readers whom it can monetize through advertising, sponsorships, and direct marketing. The Website serves that business by drawing readers with timely news content and then steering them to Defendant's programming, to its "Up First" daily email list, and to sponsored promotions.

32. The very page on which Defendant displayed the Video carried such promotions, including an advertisement for Bill O'Reilly's program on The First ("Watch for Free Weeknights 8PM ET"), a sign-up form for Defendant's daily email, and a "Bill O'Reilly Presents" offer for a free guide. Defendant thus used the Video as newsworthy content to attract readers to a page built to convert them into viewers, subscribers to its email list, and advertising audience.



SLG SANDERS LAW GROUP

33. Upon information and belief, Defendant exercises editorial, managerial, operational, and financial control over the content appearing on the Website, including the creation, acquisition, selection, editing, publication, display, distribution, and removal of content.

34. Upon information and belief, the Website forms part of Defendant's commercial enterprise and is used to attract readers, increase audience engagement, generate advertising impressions, and enhance Defendant's brand recognition.

35. At all relevant times, content published, displayed, distributed, and otherwise made available through the Website was subject to Defendant's direction and control, including the infringing content alleged herein.

36. Upon information and belief, Defendant, as a professional media company that produces and distributes television programming, is familiar with copyright licensing and with the journalistic practice of ensuring that third-party video used in its content has been properly licensed.

37. Upon information and belief, Defendant failed to implement and/or adequately enforce procedures designed to verify copyright ownership before publishing third-party video content on the Website.

38. Upon information and belief, Defendant is a sophisticated media business that regularly utilizes professionally created video content and visual media in connection with its editorial and commercial operations.

39. On or about August 28, 2023, without permission or authorization from Plaintiff, Defendant publicly displayed and distributed the Video on the Website as part of an on-line story located at URL: https://www.thefirsttv.com/bonus-video-tribal-police-in-nevada-smash-into-a-climate-protest-barricade-arrest-everyone/ (the "*Infringement*"). A copy of a screengrab depicting the Infringement is attached hereto as Exhibit 2.

40. Defendant displayed the Video by embedding, within its article, a post published on the social media platform X by a third-party account, @rawsalerts, which contained an unauthorized copy of an excerpt of the Video. Neither Plaintiff nor Fedun published that post, and



SLG SANDERS LAW GROUP

neither authorized @rawsalerts to copy, post, or distribute the Video.

41. The Infringement displayed an approximately two-minute excerpt of the Video that is a verbatim copy of the Video's most newsworthy footage, including the moment a ranger's truck drove through the protesters' blockade, and that reproduces the Video's protectable expression, including its timing, perspective, framing, and sequence.

42. Plaintiff first observed the Infringement on November 15, 2023. Plaintiff did not know of, and had no reason to know of, the Infringement before that date.

43. Upon information and belief, Defendant publicly displayed, distributed, and otherwise exploited the Video without license or permission, thereby infringing Plaintiff's copyrights in and to the Video.

44. The Infringement includes a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

45. Upon information and belief, Defendant takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Website, including Plaintiff's Video.

46. Upon information and belief, Defendant intentionally selected, incorporated, published, displayed, and distributed the Video through the Website as part of the Infringement.

47. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringement which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendant.

48. Upon information and belief, Defendant engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

49. Upon information and belief, the copy of the Video displayed on the Website bore



SLG SANDERS LAW GROUP

a visible "FREEDOMNEWS.TV" watermark identifying Fedun's news outlet as its source and was therefore readily recognizable as third-party copyrighted content.

50. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Website.

51. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Website and exercised and/or had the right and ability to exercise such right.

52. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringement.

53. Upon information and belief, the Infringement increased traffic to the Website and generated additional advertising impressions, audience engagement, subscription value, customer interest, and commercial value for Defendant.

54. Upon information and belief, Defendant distributed the Infringement to a broad audience through the Website and derived commercial value from the resulting user traffic, engagement, advertising impressions, subscription activity, and promotional exposure.

55. Defendant's use of the Video harmed the actual market for the Video.

56. Defendant's use of the Video, if widespread, would harm Plaintiff's potential market for the Video.

57. Defendant's unauthorized use usurps the market for licensed uses of the Video and undermines Plaintiff's ability to license the Video to other commercial entities.

58. On or about May 27, 2024, Plaintiff, through counsel, notified Defendant of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

59. Following receipt of Plaintiff's notice, Defendant disabled access to the article containing the Infringement.

60. Despite receiving notice of Plaintiff's claims, Defendant denied liability for the



SLG SANDERS · LAW GROUP ·

Infringement and contended that its display of the Video was authorized through X's policies and/or protected by the doctrine of fair use.

61. Defendant's position demonstrates that Defendant intentionally selected, published, displayed, distributed, and otherwise exploited the Video through the Website despite knowing that the Video originated from a third-party source and despite Plaintiff's assertion of ownership rights in the Video.

62. Upon information and belief, Defendant elected to rely upon its own interpretation of X's policies and the fair-use doctrine rather than obtaining a license from Plaintiff for the use of the Video.

63. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST COUNT**

***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

64. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

65. The Video is an original, creative work in which Plaintiff owns a valid copyright.

66. The Video is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

67. Plaintiff has not granted Defendant a license or the right to use the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

68. Without permission or authorization from Plaintiff and in violation of Plaintiff's rights under 17 U.S.C. §106, Defendant publicly displayed, distributed, and otherwise exploited the Video, thereby violating Plaintiff's exclusive rights under the Copyright Act.

69. Defendant's public display of the Video constitutes willful copyright infringement.

70. Upon information and belief, Defendant willfully infringed Plaintiff's copyrighted Video in violation of Title 17 of the United States Code by using, publishing, posting, displaying, communicating, publicizing, and otherwise holding out to the public for commercial benefit Plaintiff's original Video without Plaintiff's license, consent, or authorization.



SLG SANDERS · LAW GROUP ·

71. As a result of Defendant's violations of Title 17 of the United States Code, Plaintiff is entitled to an award of actual damages and disgorgement of Defendant's profits attributable to the Infringement as provided by 17 U.S.C. §504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. §504(c).

72. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

73. As a result of Defendant's violations of Title 17 of the United States Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. §502.

**JURY DEMAND**

74. Plaintiff hereby demands a trial of this action by jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Video in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Video by publicly displaying, distributing, and otherwise exploiting the Video without a license or authorization;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of the Video;

d. for costs of litigation and reasonable attorney's fees against Defendant

pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 11, 2026

**SANDERS LAW GROUP**

By: *__/s/ Craig Sanders__*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129146

*Attorneys for Plaintiff*

SLG SANDERS LAW GROUP